# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **IFREEDOM DIRECT CORPORATION,** **f/k/a New Freedom Mortgage Corporation,** **Plaintiff,** v. **FIRST TENNESSEE BANK NATIONAL ASSOCIATION, successor-in-interest to First Horizon Home Loan Corporation,** **Defendant.** | **MEMORANDUM DECISION AND ORDER** **Case No. 2:09-cv-205-DN-PMW** **District Judge David Nuffer** **Magistrate Judge Paul M. Warner** |

District Judge David Nuffer referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. 636(b)(1)(A).[1]  Before the court is iFreedom Direct Corporation's ("Freedom") motion to compel the Rule 30(b)(6) deposition of First Tennessee Bank, National Association ("First Tennessee").[2]  *See* Fed. R. Civ. P. 30(b)(6).  The court has carefully reviewed the written memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of written memoranda. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 95.
[2] *See* docket no. 72.

## <u>BACKGROUND</u>

On March 6, 2009, Freedom filed a complaint against First Tennessee seeking compensation for damages and legal expenses.[3]  Freedom alleges that First Tennessee violated the terms of a contract and an implied warranty of good faith by selling contractual rights and obligations to MetLife without Freedom's prior written consent, failing to abide by earnout payment obligations, and failing to operate certain residential and wholesale operations.[4]

Pursuant to Rule 30(b)(6), Freedom asked First Tennessee to designate a witness to testify on behalf of First Tennessee on several topics.[5]  *See* Fed. R. Civ. P. 30(b)(6).  Among those topics, Freedom asked that First Tennessee designate a witness to discuss First Tennessee's understanding of the terms of the Asset Purchase Agreement,[6] as well as First Tennessee's understanding of any covenant of good faith and fair dealing implied by the Asset Purchase Agreement.[7]  Freedom also asked that First Tennessee provide a witness to testify on the factual basis for the following affirmative defenses claimed by First Tennessee: lack of mitigation, waiver, estoppel, consent, unclean hands, and license.[8]  First Tennessee refused to designate a Rule 30(b)(6) witness to discuss these topics.[9]  First Tennessee argued that the topics were improper because they called for information protected from disclosure by the

---

[3] *See* docket no. 2.
[4] *See id.*
[5] *See* docket no. 74, Ex. H.
[6] *See* docket no. 74, Ex. F, Ex. A ¶ 1 (referring to First Tennessee's Answer ¶¶ 10-11); docket no. 17 ¶¶ 10-11; docket no. 10 ¶¶ 10-11.
[7] *See* docket no. 74, Ex. F, Ex. A ¶ 1 (referring to First Tennessee's Answer ¶¶ 47-50); docket no. 17 ¶¶ 47-50; docket no. 10 ¶¶ 47-50.
[8] *See* docket no. 74, Ex. F, Ex. A ¶ 2; docket no. 74, Ex. A, Interrogatories 10-11.
[9] *See* docket no. 74, Exs. G, H.

work-product doctrine and some of the topics did not call for any "facts" on which a witness could testify.[10]

As a result of First Tennessee's refusal to designate a Rule 30(b)(6) witness for these topics, Freedom filed the instant motion to compel.[11]

## ANALYSIS

In general, "[t]he district court has broad discretion over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent an abuse of that discretion." *Sec. & Exch. Comm'n v. Merril Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (quotations and citations omitted).  Based on the following analysis, an order will issue compelling First Tennessee to designate a witness pursuant to Rule 30(b)(6).  *See* Fed. R. Civ. P. 30(b)(6), 37(a)(3)(B)(ii) (permitting a motion to compel the designation of Rule 30(b)(6) witness if an organization fails to do so).

### i.    **First Tennessee has failed to properly designate a Rule 30(b)(6) witness, and Freedom's motion to compel is proper.**

When an organization is given a notice of deposition, the organization must designate one or more officers to testify on its behalf.  *See* Fed. R. Civ. P. 30(b)(6).  If an organization fails to designate a witness under Rule 30(b)(6), a party may move for an order compelling the organization to do so.  *See* Fed. R. Civ. P. 37(a)(3)(B)(ii).  "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  On a motion to compel under Rule 37, the moving party bears the burden of

---

[10] *See* docket no. 74, Exs. G, H.
[11] *See* docket no. 72.

proving that the non-moving party's responses to discovery requests were incomplete. *See, e.g.*, *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221, 227 (10th Cir. 1976).

Here, First Tennessee has failed to designate a witness pursuant to Rule 30(b)(6).[12]  *See* Fed. R. Civ. P. 30(b)(6).  Freedom submitted a notice of deposition to First Tennessee on April 26, 2011.[13]  First Tennessee objected to several topics outlined in Freedom's original Rule 30(b)(6) notice of deposition.[14]  After exchanging several e-mails with First Tennessee, Freedom agreed to somewhat limit the topics on which it would depose First Tennessee's representative.[15]  However, Freedom continued to insist that First Tennessee designate a witness to discuss First Tennessee's understanding of the terms of the Asset Purchase Agreement, whether it believed there to be an implied covenant of good faith and fair dealing in the Asset Purchase Agreement, and the factual basis for several affirmative defenses that it claimed in its answer to Freedom's complaint (specifically, lack of mitigation, waiver, estoppel, consent, unclean hands, and license).[16]  First Tennessee refused to designate a witness to testify about these topics.[17]  Because First Tennessee failed to designate a Rule 30(b)(6) witness, and because Freedom conferred with First Tennessee in good faith prior to filing this motion, Freedom's motion is proper.  *See* Fed. R. Civ. P. 30(b)(6), 37(a)(3)(B)(ii).

**ii.     Freedom's proposed deposition topics are relevant.**

The topics that Freedom has proposed for deposition are valid and proper discovery topics.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

---

[12] *See* docket no. 74, Exs. G, H.
[13] *See* docket no. 74, Ex. B.
[14] *See* docket no. 74, Ex. E.
[15] *See* docket no. 74, Ex. H.
[16] *See* docket no. 74, Ex. J, K.
[17] *See* docket no. 74, Ex. K.

party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  As a result, "the scope of discovery under the federal rules is broad and . . . 'discovery itself is designed to help define and clarify the issues.'" *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Here, Freedom properly sought deposition testimony to discover First Tennessee's understanding of the Asset Purchase Agreement.[18]  Freedom alleges that First Tennessee had a contract with Freedom that included various obligations, which Freedom specifies, and an implied covenant of good faith and fair dealing.[19]  First Tennessee has neither confirmed nor denied the existence of these obligations or an implied covenant.[20]  If First Tennessee believes that the obligations of the Asset Purchase Agreement are other than what Freedom claims, then this belief, along with any evidence supporting this belief, is relevant to Freedom's claim.[21]  Because any facts related to First Tennessee's contractual obligations are related to Freedom's claim, they are discoverable.[22]  *See* Fed. R. Civ. P. 26(b)(1).  Therefore, Freedom is entitled to ask about First Tennessee's understanding of its contractual obligations.

### iii.   First Tennessee has improperly relied on the work-product doctrine, and in so doing, has frustrated the discovery process.

First Tennessee argues that the court should deny Freedom's motion because the information Freedom is seeking is non-discoverable attorney work product.[23]  "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of

---

[18] *See* docket no. 772 p. 4; docket no. 773 p. 8-9.
[19] *See* docket no. 2 ¶¶ 10-11, 47-50.
[20] *See* docket no. 17 ¶¶ 10-11, 47-50.
[21] *See* docket no. 2 ¶¶ 10-11, 47-50.
[22] *See id.*
[23] *See* docket no. 82 p. 2, 7.

litigation or for trial by or for another party or its representative . . . ."  Fed. R. Civ. P. 26(b)(3)(A); *see also Hickman v. Taylor*, 329 U.S. 495, 509-511 (1946).  This rule, known as the work-product doctrine, "only prevents disclosure of information that was prepared by the attorney in anticipation of litigation or for trial."  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir. 2010).  And, the party asserting the work-product doctrine has the burden of proving its applicability to that party's situation.  *See id*.  When applying the work-product doctrine, it "must be strictly construed" by the court.  *Id*. at 1181.

First Tennessee cites *SEC v. Morelli*, 143 F.R.D. 42 (S.D.N.Y. 1992), and *In re Independent Service Orginizations Antitrust Litigation*, 168 F.R.D. 651 (D. Kan. 1996), for its contention that the court should limit deposition testimony to protect its attorney work product.[24]  However, the circumstances in *Morelli* and *Independet Service Organization* were very different than the circumstances now before the court.

In *Morelli*, the party opposing the deposition had fully answered the interrogatories from the deposition-seeking party.  *See* 143 F.R.D. at 44 ("Not only did the [deposition-opposing party] provide the defendants with the requested documents, but it also provided the defendants with access to all non-privileged documents in its possession."); *see also id*. at 48.  Similarly, in *Independent Service Organizations,* the party opposing deposition agreed "to provide [the deposition-seeking party] with a summary of the underlying facts supporting [the deposition-opposing party's] allegations and defenses."  *See* 168 F.R.D. at 654.  Therefore, in *Morelli* and *Independent Service Organization* the party opposing deposition provided complete answers to discovery requests on the topics for which Rule 30(b)(6) testimony was being sought.

---

[24] *See* docket no. 82 p. 1.

Here, on the other hand, First Tennessee did not answer or provide any documents in response to Freedom's interrogatories on the relevant topics.[25]  Unlike in *Morelli*, *see* 143 F.R.D. at 44, 48, and *Independent Service Organization*, *see* 168 F.R.D. at 654, there has been no alternate means proposed whereby Freedom might obtain the facts it seeks.  Because there is no alternate means proposed, Freedom's motion to compel deposition of a Rule 30(b)(6) witness should be granted.  *See In re Independent Serv. Orgs. Antitrust Litig.,* 168 F.R.D. at 654 (noting that a party "has a right to discover the facts upon which the [opposing party] will rely for its defense and counterclaims").

Moreover, First Tennessee's claim to the work-product doctrine fails because it lacks specifics.  *See In re Grand Jury Proceedings*, 616 F.3d at 1186 (rejecting a "broad-brushed claim of work product").  First Tennessee has not provided any examples of documents that are attorney work product and are at risk of being exposed by deposition.[26]  Nothing has been submitted for *in camera* review.  And, First Tennessee has not objected to any specific question asked by Freedom because Freedom has not yet been given an opportunity to ask any questions on these topics.  If First Tennessee feels that during a deposition, a question calls for attorney work product, then it can exercise an individualized claim to privilege, as is proper.  But lacking a concrete basis for an objection, including a specific example of alleged attorney work product for the court to consider, Freedom cannot claim that Freedom is asking for privileged information.  Because First Tennessee's assertion of work-product privilege lacks specifics, it is overly broad and vague.  *See id*.

---

[25] *See* docket no. 74, Ex. A.
[26] *See* docket no. 82, p. 2, 5-9.

First Tennessee essentially argues that allowing discovery of facts related to its argument would reveal the mental impressions and work product of its attorneys.[27]   If this broad claim to privilege was accepted, it is unclear if Freedom could ever discover the factual basis for First Tennessee's claims—because presumably all facts compiled to support its claims could potentially reveal some mental impression of the attorneys that are using those facts.   Such a broad claim to the work-product privilege is antithetical to the modern rules of discovery, which seek to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."   *See U.S. v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958).   First Tennessee's argument must be rejected to preserve Freedom's ability to obtain facts related to First Tennessee's claims, and to prevent unfair surprise/prejudice at trial.[28]   *See id.*; *see also In re Grand Jury Proceedings*, 616 F.3d at 1186; *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (stating that the work-product doctrine "does not protect facts concerning the creation of work product or facts contained within work product").

### iv.      Freedom is not entitled to deposition costs.

The motion before the court involved a difficult question of the scope and appropriate use of the work-product doctrine.   Therefore, the court denies Freedom's request for deposition costs because "there is no showing that either party has acted without substantial justification."   *Alta Health Strategies, Inc. v. Kennedy*, 790 F. Supp. 1085, 1100 (D. Utah 1992); *see also* Fed. R.

---

[27] *See* docket no. 82 p. 2, 7.

[28] The threat of prejudice is made all the more likely by the fact that First Tennessee has repeatedly sought Freedom's *understanding* of provisions of the Asset Purchase Agreement (presumably believing that these facts were relevant to its, First Tennessee's, case); but, has denied Freedom the opportunity to obtain such information from it, First Tennessee. *See* docket no. 88, Exh. A, pp. 89:17-90:15, 94:25-95:4, 95:19-96:4, 99:21-100:3, 100:5-21; docket no. 74, Ex. K.   Therefore, Freedom has been placed at a disadvantage because of First Tennessee's intransigence.

Civ. P. 37(a)(5)(A)(ii) (providing that the court must not order payment of expenses if the opposing party's nondisclosure was "substantially justified").

## CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Freedom's motion to compel the Rule 30(b)(6) deposition of First Tennessee[32] is **GRANTED**. Discovery will be reopened for the sole purpose of deposing First Tennessee on its understanding of the terms of the Asset Purchase Agreement; its understanding of any covenant of good faith and fair dealing implied by the Asset Purchase Agreement; and on the factual basis for its affirmative defenses of lack of mitigation, waiver, estoppel, consent, unclean hands, and license. First Tennessee is compelled to designate and produce a witness to testify on those topics. Freedom's request for deposition costs is **DENIED**.

**IT IS SO ORDERED**

DATED this 16th day of July, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[32] *See* docket no. 72.